**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000062**
**05-DEC-2022**
**10:00 AM**
**Dkt. 61 MO**

NO. CAAP-20-0000062

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


IN THE MATTER OF THE GUARDIANSHIP
OF LN AND BN
(FC-G NO. 17-1-0006)

AND

IN THE MATTER OF THE CUSTODY
OF LN AND BN
(FC-M NO. 19-1-0163)

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Petitioner-Appellant MK (**Guardian**) appeals from the January 10, 2020 Order Denying [Guardian]'s Motion to Reconsider Order Denying Her Petition for Custody and Order Granting Motion for Summary Judgment (**Order Denying Reconsideration**) entered by the Family Court of the Second Circuit (**Family Court**) in both FC-G No. 17-1-0006 (**Guardianship Case**) and FC-M No. 19-1-0163 (**Custody Case**).[1]  Guardian also challenges the Family Court's Summary Judgment Order and the Order Terminating Guardianship, as well as the Order Denying Custody.

---

[1]   The Honorable Adrianne N. Heely (**Judge Heely**) presided over the final proceedings which also resulted in the December 6, 2019 Order Granting Motion for Summary Judgment Filed October 8, 2019 (**Summary Judgment Order**) and the December 13, 2019 Order Granting Father['s] Motion to Terminate Guardianship of Minors (**Order Terminating Guardianship**) in the Guardianship Case, and the December 13, 2019 Order Denying Petition for Custody (**Order Denying Custody**) in the Custody Case; however, the Honorable Lloyd A. Poelman (**Judge Poelman**) presided over earlier proceedings stemming from a motion to terminate guardianship in the Guardianship Case.

I.    BACKGROUND

A.    The Petition for Guardianship

Respondent-Appellee Father (**Father**) and Respondent-Appellee Mother (**Mother**) are the biological and legal parents of two children (**Children**), born in 2007 and 2012.  Guardian is the Children's former maternal great aunt; she was related to the Children by her (former) marriage to Mother's uncle.

On February 15, 2017, during a period of marital strife between Mother and Father (who since divorced), Guardian filed *pro se* a Petition for Appointment of a Guardian of the Persons of Minors (**Petition for Guardianship**), in FC-G No. 17-1-0006, requesting that she be appointed guardian of the Children on the grounds that such appointment was necessary for the Children's schooling, medical care, and "proper life support."  Guardian prepared one-page "Waiver of Notice and Consent to Guardianship" papers (**Waiver and Consent**) for Father and Mother to sign.  Father did not check a box stating that he did not want notice of further hearings, but the Waiver and Consent stated that Father did not require that he be given 14 days notice; Father's Waiver and Consent is signed.  Mother's name is printed on her Waiver and Consent; a box is checked next to a statement saying, "I do not want to be notified of any further hearings and understand that the Court may grant the Petition without further notice to me."  Neither Father nor Mother were represented by counsel with respect to the Petition for Guardianship.

On April 3, 2017, a hearing was held on the Petition for Guardianship.[2]  Guardian and Father appeared at the hearing; Mother did not.  The parties were placed under oath.  The Family Court first addressed Guardian and noted that there was no proof of service or return of service filed with the Court.  Guardian stated they were served by her niece and asked if she could "write" the submission showing service.  The Court told her no, the person who served the petition and notice of hearing should do it.  No proof of service for the Petition for Guardianship

_____

[2]    Judge Poelman presided.

2

and/or the notice of hearing on the petition was ever filed.[3]

The Family Court then spoke with Father:

> THE COURT:  . . . There's a waiver of notice and consent to guardianship in the file that says that you received a copy of the petition requesting the appointment of [Guardian] as guardian of [the Children] and that you got notice of today's hearing; that you consent to the guardianship to her appointment as the guardian and waive the requirement that you receive any further notices of any hearings.  Is that correct?
>
> [Father]:  Yes.
>
> THE COURT:  And this document says that same thing. Is this your signature on the document?
>
> [Father]:  Yes.
>
> THE COURT:  And today you have been sworn to tell the truth.  Do you still consent to this guardianship?
>
> [Father]:  Yes.
>
> THE COURT:  And you are the natural father?
>
> [Father]:  Yes.
>
> THE COURT: Okay.  Thank you.  You're welcome to stay or you can be excused if you'd like, but you can stay.  I don't care.

The Family Court did not further address Father at the hearing.  The Court noted that it had the consent of the mother and Mother's name.  Although Mother's name is hand-printed on the waiver of notice and consent form, which does not appear to bear any signature, Mother does not deny that she initially consented to the guardianship.  The Court asked Guardian where she lived, with whom, and how long the Children had been living with her, as well as about her employment status.  The Court asked Guardian whether she was providing the Children "with their household care, shelter, food, and taking on those responsibilities?"  She said, "Yes.  The parents give as they can."  The Court asked further questions about the Guardian's taking on the financial, educational, and health care needs of the Children.  She informed

---

[3]     Neither Mother nor Father raised a direct challenge on any grounds to the initial April 3, 2017, Order Appointing Guardian of the Minor Persons (**Order Appointing Guardian**).  They later explained that they consented to the guardianship because they viewed it as, essentially, a means to help them and the Children through a difficult period and they never understood or intended that it could affect their custody of the Children or prevent them from reuniting with the Children.

the Court they have insurance through Medicaid.  The Court asked Guardian whether she believed the guardianship was in the best interest of the Children and asked if she understood and accepted her duties and responsibilities.  She answered affirmatively. Finally, the following exchange occurred:

> THE COURT:  Based upon the records of the case and the testimony and evidence presented, the Court finds it has jurisdiction in this matter and that all statutory requirements have been met.  The material allegations of the petition for appointment of guardian have been proven and all necessary consents have been obtained or notice requirements have been filed.
>
> **Would you just briefly on the record state why it is that there is the need for the guardianship.  Are the parents unable to take care of the children or what is the reason for the guardianship?**
>
> [Guardian]:  **They are separated.  The mother lives in Lahaina and the father works.  So it's hard for me to sign educational papers for school.  I need it to take them to the doctor.**
>
> THE COURT:  And they're living with you?
>
> [Guardian]:  Yes.
>
> THE COURT:  **And why is it that they live with you and not the parents?**
>
> [Guardian]:  **Because the mother -- the kids go to school at -- the little girl goes to [particular school] and the boy goes to [other school], but the mother lives in Lahaina and dad works early in the morning.**
>
> THE COURT:  And they don't live with the father or do they?
>
> [Guardian]:  They visit on weekends.
>
> THE COURT:  They visit the father on weekends?
>
> [Guardian]:  Yes, and sometimes mom.
>
> THE COURT:  Okay. The Court finds that the subject children are in need of -- and circumstances require a guardian be appointed.  The Court finds that the petitioner is a fit and proper person who can provide proper care and supervision, granting of the petition for guardianship will serve the welfare and best interest of the subject children.
>
> Therefore, the petition is granted.  The petitioner is appointed as guardian of the subject minor children to serve without compensation and without bond.  The guardianship will remain in effect until the attainment of majority of the subject minor children or further order of the Court.

(Emphasis added.)

The Order Appointing Guardian was entered, and corresponding Letters of Guardianship of Minor Children were

issued the same day.  It does not appear that Father or Mother were ever served with these documents, and they did not approve them as to form.

B.    The Subsequent Proceedings

On August 14, 2019, Father filed Father['s] Motion to Terminate Guardianship of Minors (**Motion to Terminate**) in the Guardianship Case.  In the Motion to Terminate, Father argued, *inter alia*, that the Family Court should terminate the guardianship because it would be in the Children's best interest to return to the custody and care of their father, that Father had never been determined to be unfit or unable to provide a safe and wholesome home for the Children, and that the court must consider the preference granted to parents.  Father explained, in his memorandum in support as well as his sworn declaration, that he consented to the guardianship because he and Mother were in the midst of a separation and contemplating divorce.  Mother had moved to another part of the island and was unable to assist in taking the Children to school and appointments, and Guardian was willing to assist.  The guardianship was presented to him by Guardian as a way to make it easier for Guardian to take the Children to school and healthcare appointments during his work days.  He attested that, during the guardianship, he maintained contact with the Children and had parenting time on the weekends, as well as at other times.  He provided financial support and spent holidays with the Children.

However, Guardian terminated contact between Father and the Children when, in 2019, he informed her that the divorce was nearly final and he wanted the Children to return to his custody and control.  Father attested that his relationship with Mother had improved since they were officially divorced and she moved back upcountry.  When Guardian was unreceptive to his request for the Children's return, Father told Guardian that he never thought he would be unable to have his children returned to him.  In response to his attempts to discuss the return of the Children, Guardian said he was giving her attitude, not being respectful, and later, that they could talk when he could talk to her without

5

being angry (he denied being angry). His last visit with the Children was on Father's Day, two months prior to filing the motion. He expressed appreciation for all that Guardian had done, but pointed to his ability to care for the Children and requested termination of the guardianship.

On August 29, 2019, Guardian filed a request to continue to act as the Children's guardian, responding to and contesting nearly all of the averments made in the Motion to Terminate (**Opposition to Termination**). As it specifically concerned whether it would be in the Children's best interest to return to Father's custody, Guardian alleged, *inter alia*, that Father was unstable, required a Breathalyzer device to drive, and lived with his girlfriend who was legally married and has three children of her own that rotate between families. Guardian raised these concerns to dispute Father's contention that he had not been found unfit nor his home found unstable or unwholesome in the original appointment proceedings.

At a September 3, 2019 hearing on the Motion to Terminate, Father and Guardian appeared with counsel and Mother appeared pro se, stating that she supported Father's attempt to terminate the guardianship. The Family Court stated that it appeared to be a contested case that should be set for trial. Guardian requested, and the parents ultimately agreed to, the Court's appointment of Davelynn Tengan (**Tengan** or **Fact Finder**) as a neutral "fact finder" to give the court factual information in the form of a report after reading the filings, contacting the parties, including Mother, and meeting with the Children. The parties discussed whether the Family Court could order *de facto* parenting time for Guardian in the event the Motion to Terminate was granted, and the court invited Guardian to file a motion for visitation.[4]

On September 17, 2019, the Family Court held a hearing regarding setting an interim parenting schedule and establishing that the Fact Finder's report was to evaluate whether there were

---

[4] Guardian never filed a motion for visitation, and instead petitioned for sole legal and joint physical custody initiating the Custody Case. Her appeal makes no argument concerning visitation. We therefore do not address the issue further.

any credible allegations that either parent was currently unfit or unable to provide a stable and wholesome home. Appearing through counsel, Mother orally moved to terminate the guardianship and for summary judgment, arguing that the parents were fit parents and that they could not afford further legal proceedings. The motions were denied without prejudice to the filing of a dispositive motion.

On September 24, 2019, Father filed a Memorandum of Law for the Fact Finder, reiterating the factual assertions and arguments made in the Motion to Terminate.

On September 25, 2019, Mother filed her memorandum in support of the Motion to Terminate. Citing Troxel v. Granville, 530 U.S. 57 (2000), Mother argued, *inter alia*, that "parents have [an] absolute constitutional right to terminate the guardianship." Mother claimed that, in the absence of a finding that parents are unfit, the Family Court was required to grant the Motion to Terminate.

On October 8, 2019, Mother filed her motion for summary judgment to terminate guardianship (**Motion for Summary Judgment**), which Father joined, echoing the arguments stated in her memorandum in support of the Motion to Terminate and urging the Family Court to immediately and summarily return the Children to their parents.

On October 8, 2019, Guardian initiated the Custody Case with the filing of a Petition for Custody. Therein, Guardian alleged that — in addition to being the legally-appointed guardian of the Children since April 3, 2017 — Guardian had *de facto* custody of the Children from 2012 and 2016, respectively.[5] Guardian claimed, *inter alia*, that the younger child had been in Guardian's care "every weekend and eventually during the weekdays" since April of 2012, when the younger child was an infant, and that Guardian began to care for the older child in June of 2016. Guardian also alleged that she "provided both

---

[5] In her opening brief, Guardian states that the Children had been living with her for "approximately six months" leading up to her appointment on April 3, 2017. At the April 3, 2017 hearing on the Petition for Guardianship, Guardian stated under oath that the Children had been living with her since September, meaning September of 2016.

minor children with a stable and wholesome home" and that she "is a fit and proper person to have care, custody, and control of the minor children."

On October 22, 2019, Tengan filed a Report of the Fact Finder (**Factfinder Report**) in the Guardianship Case. The Factfinder Report stated the charge to Tengan, as the Fact Finder, and detailed interviews with the Children, both parents, and Guardian. As a result of her factfinding, Tengan reported that there were not credible allegations that either Mother or Father were presently unfit to parent or unable to provide a stable, wholesome home for the Children. Through discussion with Guardian and Guardian's niece, Tengan identified the allegations that might bear upon Mother and Father's fitness. Tengan reported that several of the allegations were too remote in time to weigh upon the parents' current fitness. Although the Factfinder Report noted potential concerns regarding Father's alcoholism and fighting between Father and Father's girlfriend, who lives with Father, Tengan found that any concerns were outweighed by "other positive parenting and personal characteristics" identified in the interviews. The Factfinder Report also stated that the Children's preference was to live with their parents and that the Children supported Father's assertion that he had stopped drinking.

On October 23, 2019, in the Custody Case, Father filed an opposition to the Petition for Custody. Father argued that Guardian was not a *de facto* parent, but rather that she had been a babysitter and then a legal guardian. Accordingly, Guardian's role was not that of a *de facto* parent like in the cases cited by Guardian. On October 23, 2019, Father also filed Father's Answer to Petition for Custody, responding to Guardian's allegations.

On October 24, 2019, in the Guardianship Case, Guardian filed a memorandum in opposition to the Motion for Summary Judgment, disputing Father and Mother's contention that there was an absolute right to revoke a consensual guardianship where the parents were not deemed unfit or unable to provide a stable or wholesome home. Guardian asserted that the Family Court was obligated to determine the matter based on the best interest of

8

the Children and, to that end, maintained that there was a genuine issue of material fact as to whether termination of the guardianship was in the Children's best interest. Guardian also asserted that, on the basis of her *de facto* custodianship, there was *prima facie* evidence that awarding custody to Guardian was in the children's best interest.

On October 29, 2019, a hearing was held on the Factfinder Report, the Motion for Summary Judgment, and the Petition for Custody. The Family Court acknowledged its receipt of the Factfinder Report and confirmed with Tengan her finding that neither parent is unfit or unable to provide a stable or wholesome home. After lengthy arguments, and a Hawaiʻi Family Court Rules (**HFCR**) Rule 56(f) request by Guardian to be allowed to file a declaration addressing the Motion for Summary Judgment and the Factfinder Report, the Family Court declined to rule at that time on the parents' fitness and the legal arguments presented by the parties. The Family Court invited the parties to file declarations opposing or supporting fitness and continued the hearing on the Motion for Summary Judgment. At a further hearing the next day, which was intended to address interim custody of the Children, the Family Court noted:

> The Court does not agree with the initial portion of the motion for summary judgment that says that the parents can create a guardianship and terminate the guardianship if there's a question of fact whether they are fit parents, and that is and if there is a question of fact. **If there's no question of fact there and if the parents are fit and proper and stable, then I agree with their position that they have an absolute right to terminate the guardianship and take custody again of the children, but if there is a question of fact as to whether they are fit and stable, then that issue would need to be tried.**
>
> So the Court under [HFCR] Rule 56(f) set deadlines yesterday for filings of declarations and affidavits in regard to whether there is a question of fact as to whether or not the parents are fit or not, and the Court said yesterday it will take the fact finder's findings into consideration as part of that motion for summary judgment.
>
> Now, I did review the fact finder's findings, and the fact finder's opinion was that these parents are fit. That's still disputed by the guardian at this point in time. We still are in the middle of this motion for summary judgment question.

(Emphasis added).

9

The court went on to state that "while there's a question of fact being alleged regarding the fitness of the parents, the fact finder's findings didn't support that."

On November 5, 2019, Father submitted a declaration supporting the Fact Finder's finding that he was fit, proper, and able to provide a wholesome home; asserting that all of Guardian's allegations regarding his fitness were well behind him; and categorically denying the new allegations as hearsay and falsehoods. Father's mother, girlfriend, and sister, and employer also submitted declarations supporting Father's fitness to regain custody of the Children.

Also on November 5, 2019, Guardian submitted her declaration in opposition to the Motion for Summary Judgment, making a series of allegations regarding, *inter alia*, the conditions leading to the creation of the guardianship, Father's history of drinking and driving, the Children's concerns about Father's relationship with his girlfriend, and other concerns about whether it was in the Children's best interest to be returned to their parents.[6]

On November 7, 2019, Mother submitted affidavits from Jenna Yap, Executive Director of the Keiki Aloha & Miss Hawaii America Preliminary Scholarship Competition; Mother's mother; and a friend of the family attesting to, *inter alia*, Mother's character and fitness.

On November 12, 2019, in the Custody Case, Guardian filed a reply memorandum to Father's opposition to the Petition for Custody, arguing that she had asserted a *prima facie* case of *de facto* parenting and distinguishing the case law cited by the parents.

A hearing was held on November 19, 2019, during which the Family Court heard arguments regarding the Motion for Summary Judgment, Motion to Terminate, and Petition for Custody. The court reconvened on November 27, 2019 to issue its rulings on the Motion for Summary Judgment, Motion to Terminate, and Petition for Custody. At the further hearing, the court recounted in

_____

[6] The declaration also contains averments pertaining to the Children's activities and well-being while under Guardian's care.

10

detail its review of the history of both the Guardianship and Custody Cases. The court reviewed the creation of guardianship; reviewed the authority of Fact Finder and the Factfinder Report, cataloged the various motions and memoranda filed by the parties and the rulings made by the prior judge, and ultimately granted the Motion for Summary Judgment and Motion to Terminate, finding no genuine issue of material fact that "parents are ready and able to provide a safe, proper home for their children." The court then stated its determinations regarding the Petition for Custody and denied the petition on the grounds that Guardian was not a *de facto* parent, acknowledging the preference it accorded to the parents in granting termination of the guardianship.

On December 6, 2019, the Family Court entered the Summary Judgment Order. On December 13, 2019, the Family Court entered the Order Terminating Guardianship and Order Denying Custody. On December 23, 2019, Guardian filed a motion to reconsider the Order Denying Custody and the Summary Judgment Order (**Motion for Reconsideration**) in the Guardianship and Custody Cases. Mother and Father both opposed the motion, and on January 10, 2020, the Family Court entered the Order Denying Reconsideration.

On February 7, 2020, Guardian timely filed a notice of appeal.

II. <u>POINTS OF ERROR</u>

Guardian raises three points of error on appeal, contending that the Family Court erred in: (1) granting the Motion for Summary Judgment and the Motion to Terminate;[7] (2) dismissing the Petition for Custody for failure to state a claim

---

[7] Guardian's points of error do not comply with the requirements of Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4), including but not limited to the failure to specifically identify the alleged error(s) and where in the record they occurred. For example, the first point of error states "The Family Court erred when it granted Parent's *MOTION FOR SUMMARY JUDGMENT TO TERMINATE GUARDIANSHIP* in the guardianship case" with no indication of where in the record the alleged error occurred or where it was objected to. Although the imprecise wording used seems to challenge only the Summary Judgment Order, and not the Order Terminating Guardianship, in the interest of reaching the merits, to the extent that it is possible and makes sense to do so, we will attempt to construe the related arguments in the "Argument" section of the opening brief as applicable to both orders.

upon which relief could be granted; and (3) denying reconsideration.

III.  <u>APPLICABLE STANDARDS OF REVIEW</u>

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decision on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Hamilton v. Hamilton, 138 Hawaiʻi 185, 197, 378 P.3d 901, 913 (2016) (quoting Kakinami v. Kakinami, 127 Hawaiʻi 126, 136, 276 P.3d 695, 705 (2012)).  Likewise, we review the denial of a motion for reconsideration for abuse of discretion.  See Doe v. Doe, 98 Hawaiʻi 144, 150, 44 P.3d 1085, 1091 (2002).

We review an award of summary judgment *de novo* under the same standard applied by the Family Court.  See Blaisdell v. Dep't of Pub. Safety, 119 Hawaiʻi 275, 282, 196 P.3d 277, 284 (2008).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Omerod v. Heirs of Kaheananui, 116 Hawaiʻi 239, 254-55, 172 P.3d 983, 998-99 (2007) (brackets omitted) (quoting Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc., 114 Hawaiʻi 37, 46, 155 P. 3d 1138, 1147 (2007)).

IV.  <u>DISCUSSION</u>

There are three decisions at issue on appeal, the Family Court's granting of summary judgment and termination of the guardianship in the Guardianship Case, and the Family Court's denial of the Petition for Custody, in which Guardian sought sole legal and joint physical custody of the Children, in the Custody Case.

12

A.   The Summary Judgment Order and the Order Terminating Guardianship

The Petition for Guardianship identified the Children and their parents, and stated only that Guardian's appointment was necessary because "the children need to be enrolled in school, need medical care, and need proper life support."  The petition did not allege that the Children were abused or neglected in any way; nor did it allege that the parents were unfit or unable to care for the Children.  The petition sought appointment of Guardian pursuant to Hawaii Revised Statutes (**HRS**) § 560:5-204 (2018),[8] which provides in relevant part:

> **§ 560:5-204  Judicial appointment of guardian; conditions for appointment.**  (a)  A minor or a person interested in the welfare of a minor may petition for appointment of a guardian.
>
> (b)  The court may appoint a guardian for a minor if the court finds the appointment is in the minor's best interest, and:
>
> (1)   The parents consent;
>
> (2)   All parental rights have been terminated; or
>
> (3)   The parents are unwilling or unable to exercise their parental rights.

HRS § 560:5-206 (2018) provides in relevant part:

> **§ 560:5-206  Judicial appointment of guardian; priority of minor's nominee; limited guardianship.**  (a)  <u>The court shall appoint as guardian a person whose appointment will be in the best interest of the minor</u>.  The court shall appoint a person nominated by the minor, if the minor has attained fourteen years of age, unless the court finds the appointment will be contrary to the best interest of the minor.

(Emphasis added).

At the April 3, 2017 hearing on the Petition for Guardianship, after putting Guardian under oath, the Family Court asked her whether the parents were unable to take care of the children or what was the reason for the guardianship.  Guardian did not say that the parents were unable or unfit to care for the

---

[8]    Contrary to certain arguments made by Guardian after Father and Mother sought to terminate the guardianship, this guardianship was not initiated pursuant to HRS § 560:5-202 (2018), which permits parental appointment of a guardian effective upon the appointing parent's death or adjudicated incapacitation, or a physician's determination that the parent is no longer able to care for the child.

13

Children, but instead responded that the parents were separated and the father worked, and she (Guardian) needed it (the guardianship) to sign educational papers for school and to take the Children to the doctor. Again, there was no assertion that the parents were neglectful or abusive or that they were relinquishing custody to Guardian, who was the Children's long-time babysitter, as well as an extended family member (through an ex-spouse). The court asked why the Children lived with her, not the parents, and she explained that the Mother lived in Lahaina, the Children both go to schools in upcountry Maui - near where both Guardian and Father live - and "dad" works early in the morning. When asked, Guardian said that the Children visit Father, and sometimes Mother on the weekends. With that, the Family Court granted the Petition for Guardianship and entered the form of order submitted by Guardian (which was not approved as to form by Mother and Father), as well as the Letters of Guardianship submitted by Guardian.

Roughly two years later, Father sought to terminate the guardianship pursuant to HRS § 560:5-210 (2018), which provides:

> **§ 560:5-210 Termination of guardianship; other proceedings after appointment.** (a) A guardianship of a minor terminates upon the minor's death, adoption, emancipation or attainment of majority, or as ordered by the court.
>
> (b) A ward or a person interested in the welfare of a ward may petition for any order that is in the best interest of the ward. The petitioner shall give notice of the hearing on the petition to the ward, if the ward has attained fourteen years of age and is not the petitioner, the guardian, and any other person as ordered by the court.

In the Motion to Terminate, Father argued, *inter alia*, that it was in the best interests of the Children to terminate the guardianship and return the Children to Father's care and custody, and that there had never been any allegation that he was an unfit parent or that he was unable to provide Children with a stable and wholesome home. Father's declaration explained, *inter alia*, his consent to the guardianship:

> 8. When [Guardian] told me about the guardianship papers in April of 2017, it was presented to me as a way to make it easier for her to take the children to school and to their healthcare appointments; I didn't understand that I was giving up custody and control of

14

> my children; if I had known about power of attorney I
> would have just signed those for her[.]

With the Opposition to Termination, Guardian submitted a 18-page (single-spaced) declaration asserting for the first time that the guardianship had been necessary because, *inter alia*, Father and Mother were unable to properly parent the Children and provide a stable home, and that both Mother and Father had alcohol or drug addictions. Guardian did not contradict Father's statement (above) that the guardianship had been presented by her as a means to facilitate school and healthcare matters. Guardian did not dispute Father's averment that Father was not informed and did not understand that consent to the guardianship could be viewed as giving up custody and control of the Children.

The Family Court did not address the substance of the Motion to Terminate at the initial hearing, and instead appointed the Fact Finder and set a date for an evidentiary hearing, addressed that Guardian could file a motion for "de facto parenting time," which could come into play if the guardianship were terminated, and established a pretrial and motions schedule. After the filing of the Petition for Custody, the Motion for Summary Judgment, the Factfinder Report, and further submissions of the parties and interim hearings, on November 19, 2019, the motions came on for hearing in the Guardianship Case.[9]

Mother's argument in the Motion for Summary Judgment was that, as there had never been any determination that Father and Mother were unfit parents, and the guardianship was grounded solely in their consent, that they had a fundamental right to terminate the guardianship. In her memorandum in opposition, Guardian argued that the proper inquiry under HRS § 560:5-210 was whether the termination of the guardianship was in the Children's best interests. At the second of two hearings at which this motion was discussed by Judge Poelman, on October 30, 2019, the court explained:

---

[9] Matters at issue in the Custody Case came on for hearing at the same time, but they will be discussed separately.

> I just wanted to briefly summarize as far as the motion for summary judgment, thank you for all the argument and all your presentations yesterday. I basically took that under advisement. I didn't rule on the motion itself other than to say it's possibly a question of fact whether the parents are fit, and taking the motion in the light most favorable and the prior declarations, the Court still wanted to ask for updated declarations after the fact finder's report from the guardian to establish whether or not there really is a question of material fact as to whether or not the parents are fit as parents, and what is left is a question of fact, then, that will have to go to trial.
>
> The Court does not agree with the initial portion of the motion for summary judgment that says that the parents can create a guardianship and terminate the guardianship if there's a question of fact whether they are fit parents, and that is and if there is a question of fact. If there's no question of fact there and if the parents are fit and proper and stable, then I agree with their position that they have an absolute right to terminate the guardianship and take custody again of the children, but if there is a question of fact as to whether they are fit and stable, then that issue would need to be tried.
>
> So the Court under [HFCR] Rule 56(f) set deadlines yesterday for filings of declarations and affidavits in regard to whether there is a question of fact as to whether or not the parents are fit or not, and the Court said yesterday it will take the fact finder's findings into consideration as part of that motion for summary judgment.
>
> Now, I did review the fact finder's findings, and the fact finder's opinion was that these parents are fit. That's still disputed by the guardian at this point in time. We still are in the middle of this motion for summary judgment question. When I have pending matters before they go to trial, sometimes it can take a while. I have possible trial dates, but these might be too soon but if we don't use these trial dates, which actually don't work because they're before the continued motion for summary judgment, I'd like to get on the calender the trial date in the event the motion for summary judgment is denied and if the Court finds there is a question of fact to go to trial regarding the fitness of the parents.

Thus, while making it clear that he was not ruling on the Motion for Summary Judgment, Judge Poelman indicated four things: (1) that he rejected Mother's argument that parents can create and then terminate a guardianship, as a matter of law, even if there is a genuine issue of material fact as to whether they are fit parents; (2) he agreed with Mother's argument that to the extent that if there was no genuine of material fact as to whether the parents are fit parents, then they have an absolute right to terminate the guardianship and take custody of the Children; (3) although the Fact Finder's opinion was that Father and Mother are fit parents, Guardian disputed their fitness; and

16

(4) pursuant to HFCR Rule 56(f), the court was allowing the parties to file additional declarations or affidavits on the issue of the parents' fitness, and would then rule on the Motion for Summary Judgment. At the prior, October 29, 2019 hearing, Judge Poelman further indicated that the ruling on summary judgment would be made viewing the facts in the light most favorable to the non-moving party, in this case, Guardian.

The matters next came on for hearing on November 19, 2019, before Judge Heely, who asked each of the parties to address whether they had any objection to her reviewing the record, including the details of what had transpired at the prior hearings before Judge Poelman, and then ruling on them. No objections were raised to proceeding as suggested by Judge Heely. At that hearing, Guardian argued that, contrary to Judge Poelman's characterization of the issue, the termination of the guardianship should be based on what is in the best interest of the Children, not on whether or not Father and Mother were fit parents. Guardian further argued that based on the declarations submitted, viewed in the light most favorable to Guardian, there were genuine issues of material fact either as to whether Father and Mother were fit and proper parents or whether it was in the best interests of the Children to terminate the guardianship. Father and Mother argued that this was a "simple consensual guardianship" case where they agreed to the Family Court creating a "de jour guardianship." In context, parents were arguing that their consent was only effective to give Guardian certain legal status to help Guardian care for their Children and that they never consented to a guardianship that would impinge on their parental rights. Guardian reiterated that the declarations established that there was a genuine issue of material fact as to whether Father and Mother were fit and proper parents. Judge Heely indicated that she would continue the hearing to allow her time to review the record, including the record of the prior hearings as well as the declarations that were filed concerning the summary judgment, and that court would reconvene on November 27, 2019, for the court's rulings on all pending matters.

At the continued hearing on November 27, 2019, the Family Court reviewed in part the record of the proceedings that the court had considered, including but not limited to the Fact Finder's investigation of the best interest of the Children pursuant to HRS § 571-46(a)(4) (2018). The Family Court noted in particular the Fact Finder's opinion that neither Mother nor Father were unfit parents or lacked stability or wholesomeness. The Family Court confirmed that the Motion to Terminate and the Motion for Summary Judgment were separate and distinct motions. The Family Court ruled that there was no genuine issue of material fact and that Mother was entitled to summary judgment as a matter of law. The Family Court then indicated that based on its review of the entirety of the record, the court was granting the Motion to Terminate.

On appeal, Guardian argues that the Family Court erred in granting the Motion for Summary Judgment because there was a genuine issue of material fact as to whether the termination of the guardianship was in the best interest(s) of the ward(s), in this case the Children. Guardian further argues that there was a genuine issue of material fact as to whether it was in the best interests of the Children to terminate the guardianship in light of Guardian's declaration expressing her concerns regarding the fitness of both Mother and Father. We review these issues *de novo*.

As to the parents' fitness, on appeal, Guardian points to "instances of alcohol intoxication on the part of Father" that were "detailed" in Guardian's declaration, presumably referencing the November 5, 2019 declaration in opposition to the Motion for Summary Judgment, but no record citation was provided. Guardian's November 5, 2019 declaration includes 33 numbered paragraphs, as well as numerous subparagraphs. Paragraphs 6 and 7 of Guardian's declaration repeated hearsay reports concerning Father "driving under the influence" two times in 2014 and again in January 2017, two years and ten months prior to the ruling on the Motion for Summary Judgment. Paragraph 12 states that one of the Children said something to Guardian's niece — not Guardian — about an alleged incident in January of 2019 related to a

18

Breathalyzer device in Father's car. Guardian's November 5, 2019 declaration does not create a genuine issue of material fact as to Father's unfitness as a parent due to instances of alcohol intoxication. While the record as a whole, including the Factfinder's Report, indicates that Father has a history of problems with alcohol, it also indicates that he was sober, and Father's history did not rise to the level of unfitness, lack of stability, or lack of wholesomeness. We note the opportunities given to provide further additional evidence pursuant to HFCR Rule 56(f), and we conclude that the Family Court did not err in concluding Guardian did not raise a genuine issue of material fact as to Father and Mother's fitness as parents.

There is nothing in the record to indicate that the Family Court's ruling on the Motion for Summary Judgment was intended to address factual or legal issues beyond the parents' fitness. Neither the oral ruling or written Summary Judgment Order indicate any ruling on Mother's argument concerning her fundamental constitutional rights as a parent. Guardian does not argue otherwise on appeal. We decline to express an opinion as to a question of law that was not ruled on by the Family Court.

As to the Order Terminating Guardianship, Guardian's only argument on appeal is that the Family Court "applied the wrong standard, indicating only that the parents were ready and able to provide a safe, proper home for their children, not whether it was in their best interests to terminate the guardianship." This argument is without merit. The Motion to Terminate specifically asked the Court to determine that it was in the best interests of the Children to terminate the guardianship, arguing, *inter alia*, that the court must consider the preference granted to parents pursuant to HRS § 560:5-210 and HRS § 571-46(a)(1) when determining the Children's best interests. Guardian provides no citation to the record supporting the argument that the court's ruling on the Motion to Terminate was not based on the best interests of the Children. Guardian makes no specific factual or legal argument on appeal — except as to the parents' fitness, which has already been addressed — that it was not in the Children's best interests to

19

terminate the guardianship.

Accordingly, we conclude that the Family Court did not err in entering the Summary Judgment Order. We further conclude that the Circuit Court did not err or abuse its discretion in entering the Order Terminating Guardianship.

B.   Order Denying Custody

Guardian argues that the Family Court erred in dismissing the Petition for Custody, purportedly for failure to state a claim upon which relief can be granted.

As stated above, on October 8, 2019, Guardian filed the Petition for Custody. In it, Guardian alleged that she is a fit and proper person to have care, custody and control of the Children, she can provide the Children with a stable and wholesome home, and she has had *de facto* custody of the Children for an extended period of time. Guardian further alleged, *inter alia*, that pursuant to HRS § 571-46(a)(2) and the Hawaiʻi Supreme Court's decision in A.A. v. B.B., 139 Hawaiʻi 102, 384 P.3d 878 (2016), Guardian should be adjudged to be a "*de facto* custodian" of the Children and that she should be awarded sole legal and shared physical custody of the Children, pursuant to a parenting plan to be proposed by her. Father and Mother raised numerous arguments in opposition to the Petition for Custody, but the central argument was that Guardian did not have *de facto* custody of the Children, rather she was a long-time babysitter who offered to help care for the Children during the work week, while the parents were struggling through their separation and divorce, and that the legal guardianship was presented to them as a way of making it easier for her to provide additional support to the Children, in particular with respect to school and health care matters.

Before further examining the parties' arguments and the Family Court's ruling on the Petition for Custody, we consider the supreme court's decision in A.A., which addresses the interpretation and application of HRS § 571-46(a)(2), which permits an award of custody to a person who has had *de facto* custody of a child. HRS § 571-46(a) provides in relevant

part:

> **§ 571-46  Criteria and procedure in awarding custody and visitation; best interest of the child.**  (a)  In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper.  In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
>
> > (1)  Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court also may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;
> >
> > (2)  Custody may be awarded to persons other than the father or mother whenever the award serves the best interest of the child.  Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall be entitled prima facie to an award of custody;
> >
> > (3)  If a child is of sufficient age and capacity to reason, so as to form an intelligent preference, the child's wishes as to custody shall be considered and be given due weight by the court[.]

A.A. involved a same-sex couple, who jointly decided to adopt and raise a child who was the biological grandchild and legal adoptive child of B.B.  139 Hawaiʻi at 104, 384 P.3d at 880.  They lived together as a family unit, along with B.B.'s teenage son, jointly sharing all parental care, duties, custody, and responsibilities.  Id.  They jointly planned for A.A. to also adopt the child, but that did not occur.  Id.  When they separated, they entered into a written 50/50 co-parenting agreement, which B.B. later sought to revoke.  Id.  A.A. petitioned for joint custody pursuant to the *de facto* custody provision in HRS § 571-46(a)(2).  Id.

The supreme court emphasized that the over-arching consideration in child custody matters is the best interests of the child, and that the family courts possess broad discretion as to that determination.  Id. at 106, 384 P.3d at 882.  The court noted that pursuant to HRS § 571-46(a)(1), custody "should be" awarded to either or both parents, according to the best interests of the child, but that pursuant to the *de facto* custody

21

provision in HRS § 571-46(a)(2), custody "may be" awarded to someone else, if that award serves the best interests of the child. 139 Hawaiʻi at 106, 384 P.3d at 882. In examining HRS § 571-46(a)(2), the supreme court stated:

> Although "de facto custody" is not defined, we interpret it to mean sole or shared physical custody in combination with an assumption of incidents of legal custody enumerated in HRS § 571-2, which include "the duty to protect, train, and discipline the minor and to provide the minor with food, shelter, education, and ordinary medical care." In other words, de facto custody is consistent with a parental role.

Id. at 107, 384 P.3d at 883.

Later in its opinion, in conjunction with one of the court's many references to B.B.'s expansive treatment of A.A. as a co-parent, voluntarily sharing physical custody and parenting decisions and duties, the supreme court clarified that:

> Our decision [regarding whether B.B.'s protected parental rights would be violated by sharing custody with A.A.] is based on the circumstances presented by this case. **We note that a parent does not relinquish his or her parental rights by merely relying on childcare assistance from others**. **As stated, de facto custody is not established by mere physical custody of a child.** Nonetheless, we decline to adopt a bright line rule regarding the extent of a parent's protected liberty interest as "the constitutional protections in this area are best 'elaborated with care'" on a case-by-case basis.

Id. at 114 n.18, 384 P.3d at 890 n.18 (emphasis added).

The supreme court identified the three statutory factors by which a person may establish a *prima facie* case of *de facto* custody, that the person seeking custody is (1) a fit and proper person, (2) who has had *de facto* custody of the child, (3) in a stable and wholesome home. Id. at 107, 384 P.3d at 883. However, the court again noted the family court's ultimate discretion in determining the custody award based on the best interests of the child. Id. Due to the insufficiency of the family court's findings concerning whether A.A. established a *prima facie* case, the supreme court "express[ed] no opinion" on the issue but nevertheless noted that the record was sufficient to support a finding of *de facto* custody because B.B. "shared all parental care, duties, and responsibilities with respect to Child with A.A. from [early infancy in] October 2011 to October 2013 and then continued to have actual joint custody of Child until

22

April 2014, pursuant to the written co-parenting agreement."[10] Id. at 107 n.8, 384 P.3d at 883 n.8.

As argued by Guardian, at the October 30, 2019 hearing, Judge Poelman described Father's opposition to the Petition for Custody "as a kind of a Rule 12(b)(6) motion saying that there's a failure to state a . . . claim upon which relief can be granted . . . ." The judge invited Guardian to file an opposition or response to that argument prior to the next hearing, which Guardian did. At the next hearing, held on November 19, 2019, Father argued to Judge Heely that:

> The petition should be denied because there is no de facto parenting here. There is none of that. She had de jour guardianship. They have never lived together. They have never created a parent-like relationship. She's trying to come in on [a custody case] by claiming because she had guardianship of the children, she created a de facto parenting, and under all the facts that is not true, your Honor. She can't even make that borderline threshold argument.

In other words, notwithstanding Judge Poelman's characterization, Father argued that the facts did not support a finding of *de facto* parenting. Guardian argued that pursuant to A.A., Guardian was authorized to assert that she had a *de facto* parental relationship with the Children, and that she satisfied the *prima facie* criteria, recognizing that making a *prima facie* case did not entitle her to custody. Guardian's counsel stated that Guardian was seeking an evidentiary hearing, but then said that with respect to the Custody Case, based on Judge Poelman's determination that Father's opposition was like an HFCR 12(b)(6)

---

[10] As discussed below, in this case, the lack of findings of fact concerning whether Guardian established a *prima facie* case of *de facto* custody under HRS § 571-46(a)(2), as well as findings and conclusions concerning the ultimate issue of the best interests of the Children, render the record insufficient for appellate review of the Order Denying Custody. We express no opinion, but nevertheless note that there are numerous distinctions between the case at bar and A.A., and the record tends to support a finding that Guardian did not have *de facto* custody of the Children. Here, there is no evidence in the record that the parents intended to share custody or co-parent with Guardian. On the contrary, she was the trusted, long-time babysitter who offered to assist the parents and the Children get through a stressful period during the marital breakup. As she testified under oath at the initial guardianship proceeding, the "consensual" guardianship was to facilitate school and doctor appointments. Parents never agreed or gave any sort of informed consent to joint custody or a relinquishment or diminution of their parental rights. There is no evidence that the Children ever considered Guardian to be a parent, as opposed to a valued caregiver.

motion, the court would not need to take evidence to decide the case.

At the next (and final) hearing, the Family Court (Judge Heely) stated the court's ruling that the Petition for Custody was denied. When challenged by Guardian's counsel that "Judge Poelman ruled this was a 12(b)(6) motion, has to be decided on the pleadings, not on the facts[,]" the court noted that it relied on the pleadings, including Father's opposition asserting that Guardian was not a *de facto* parent. The Family Court noted that Father and Mother had been the parents for nine years plus and they have rights, and the court questioned why Guardian did not file a petition for custody during the pendency of the guardianship. Guardian's counsel responded, "She didn't file it before because she wasn't a de facto parent yet." The court said "exactly . . . she's not a de facto parent and she -- the Court ruled that she is not a de facto parent . . . ."

While the Family Court orally ruled that Guardian was not a *de facto* parent, the court did not enter findings of fact and conclusions of law supporting that ruling. Indeed, both Family Court judges seemed to indicate that the court would be ruling on the Petition for Custody as a matter of law, but it appears that the Family Court ultimately concluded that Guardian did not establish the facts necessary for a *prima facie* case of *de facto* custody under HRS § 571-46(a)(2).

In light of this record, we must conclude that the record is insufficient for appellate review of the Order Denying Custody. The Family Court should have, at a minimum, made findings and conclusions with regard to whether Guardian satisfied the *de facto* custody test of HRS § 571-46(a)(2). See A.A., 139 Hawaiʻi at 108, 384 P.3d at 884. Further, it appears that some sort of evidentiary hearing was necessary to make such findings and conclusions, as we cannot conclude, as a matter of law, that Guardian cannot petition for custody pursuant to HRS § 571-46(a)(2). As it is necessary to remand this case to the Family Court, we note that even if the Family Court were to find and conclude that Guardian had *de facto* custody of the Children for some period of time, and satisfied the other two statutory

24

factors, the establishment of a *prima facie* entitlement to custody is not dispositive. The Family Court must make the ultimate determination as to the best interests of the Children in granting or denying Guardian's petition, which may need to be supported by additional findings.

C.    The Order Denying Reconsideration

Guardian provides no discernible argument on appeal that she presented new evidence and/or arguments that were not or could not have been presented during the earlier adjudicated motions in the Guardianship Case. See, e.g., Tagupa v. Tagupa, 108 Hawaiʻi 459, 465, 121 P.3d 924, 930 (App. 2005) ("The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." (brackets omitted)). As we have concluded that the record is insufficient to review the Family Court's Order Denying Custody, we need not reach the issue of whether the Family Court abused its discretion in denying reconsideration of that order.

V.    CONCLUSION

For these reasons, the Family Court's December 13, 2019 Order Terminating Guardianship is affirmed. The Family Court's December 13, 2019 Order Denying Custody is vacated, and the Custody Case is remanded to the Family Court for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, December 5, 2022.


On the brief:                          /s/ Katherine G. Leonard
                                       Presiding Judge
Benard M. Herren,
Valerie B. McKelvey
(Cain & Herren, ALC), and              /s/ Keith K. Hiraoka
Brianne L.O. Wong Leong                Associate Judge
(Wong Leong Cuccia, LLLC)
  for Petitioner-Appellant.
                                       /s/ Clyde J. Wadsworth
                                       Associate Judge